IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARTINSBURG**

RONALD SATISH EMRIT,

      **Plaintiff,**

v.                                  **Case No. 3:22-CV-35**

CENTRAL INTELLIGENCE
AGENCY, et al.

      **Defendants.**

## REPORT AND RECOMMENDATION

Pending before the court is the plaintiff's Complaint [ECF No. 1] and Application to Proceed Without Prepayment of Fees and Costs [ECF No. 2]. This matter is assigned to the Honorable Gina M. Groh, United States District Judge, and is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) to consider and rule on Plaintiff's Motion. ECF No. 4. After that referral, a notice of appeal [ECF No. 5] was filed. Because no appealable order has been entered by the District Court to confer jurisdiction to the Fourth Circuit, the undersigned deems it proper to proceed with the disposition of the Plaintiff's Motion. [1] For the reasons explained more fully herein, it is **RECOMMENDED** that Plaintiff's Application to Proceed Without

---

[1] While the filing of a notice of appeal generally deprives the district court of jurisdiction, see Levin v. Alms & Assocs., 634 F.3d 260, (4th Cir. 2011), this is not an invariable rule. Rather, where a notice of appeal has been filed from an order that is non-appealable, jurisdiction remains with the district court. See Leonhard v. United States, 633 F.2d 599, 610 (2d Cir. 1980) ("[W]e see no efficiency to be gained by allowing a party arbitrarily to halt the district court proceedings by filing a plainly unauthorized notice which confers on this Court the power to do nothing but dismiss the appeal."); see also Turner, 651 Fed. App'x 178, 179–180 (explaining that a premature notice of appeal does not deprive the district court of jurisdiction to enter a final order).

Prepayment of Fees and Costs [ECF No. 2] be **DENIED**, that the Complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B), and prefiling sanctions be imposed upon Plaintiff as a vexatious litigator, prohibiting him from proceeding *in forma pauperis* in any future cases in this District except as provided by the Court.

## I.   BACKGROUND

### A.   Plaintiff's Litigation History in the Federal Courts

A well-documented "serial *pro se* filer" since approximately 2013, Plaintiff Ronald Satish Emrit ("Plaintiff" or "Emrit") has initiated more than three hundred civil actions in district courts nationwide, from Maine to Hawaii. Despite the fact that most or all of these complaints have been dismissed for improper venue or failure to state a claim, Plaintiff continues to abuse the *in forma pauperis* ("IFP") privilege by recycling the same patently frivolous allegations against various government agencies and officials in inscrutable pleadings that demonstratively clog the federal district courts with meritless litigation.[2] Due to Plaintiff's "extensive and abusive nationwide litigation practices . . .

---

[2] As they are matters of public record, the Court takes judicial notice that multiple federal district courts have dismissed complaints filed by Mr. Emrit and found that he improperly engaged in the same litigation conduct at issue here. Lydick v. Erie Ins. Prop. & Cas. Co., 358 F. Supp. 3d 552, 557 (S.D. W. Va.), aff'd, 778 F. App'x 271 (4th Cir. 2019) (taking judicial notice of the plaintiff's underlying complaint and dismissal order in a prior claim). For a representative sampling, *see* Emrit v. Fed. Bureau of Investigation, 6:20-CV-191, 2020 WL 1452495, at *2 (Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 1451623 (M.D. Fla. Mar. 25, 2020), *appeal dismissed*, 20-11361-B, 2020 WL 3959459 (11th Cir. May 13, 2020) ("Plaintiff is a frequent filer of frivolous claims in federal court."); Emrit v. Devos, 2:20-MC-00316, 2020 WL 1279205, at *1 (Feb. 19, 2020), *report and recommendation adopted*, 2020 WL 1272606 (S.D. Tex. Mar. 17, 2020), *appeal dismissed*, No. 20-40228, 2020 WL 5650457 (5th Cir. July 23, 2020) ("Emrit is a serial *pro se* filer of frivolous complaints in federal court, and this case is no exception."); Emrit v. Fed. Bureau of Investigation, 20-CV-265, 2020 WL 731171, at *1 (S.D. Cal. Feb. 13, 2020), *appeal dismissed*, 20-55332, 2020 WL 5648232 (9th Cir. July 24, 2020) ("Plaintiff Ronald Satish Emrit is a serial *pro se* filer of frivolous complaints in federal court against government agencies and officials . . . . Most or all of these complaints have been dismissed for improper venue or failure to state a claim"); Emrit v. Universal Music Grp., 3:19-CV-05984, 2019 WL 6251365, at *2 (Nov. 4, 2019), *report and recommendation adopted*, 19-CV-5984, 2019 WL 6251192 (W.D. Wash. Nov. 22, 2019) ("Plaintiff has a history of abusing the IFP privilege and Plaintiff has been acknowledged as a vexatious litigator in at least six district courts."); Emrit v. Trump, 1:19-CV-18, 2019 WL 140107, at *1 (Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 935028 (S.D. Ohio Feb. 26, 2019) (noting that "Plaintiff has filed

Plaintiff has been deemed a vexatious litigant or subjected to prefiling requirements in multiple district courts across the country." Emrit v. Trump, 1:19-CV-18, 2019 WL 140107, at *2 (Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 935028 (S.D. Ohio Feb. 26, 2019). A district court in Hawaii catalogued a portion of those nationwide orders:

> The Court again takes judicial notice of Emrit's extensive record of filing in districts nationwide, including those in which he has been deemed a vexatious litigant or subjected to prefiling requirements. See, e.g., Emrit v. Az. Supreme Court, 15-CV-01718, 2016 WL 910151, at *4 (D. Ariz. Mar. 9, 2016) (finding "that there is an adequate record to support the issuance of a vexatious litigant order against Plaintiff" and citing cases); Emrit v. Nat'l Acad. of Recording Arts & Scis., 1:14-cv-00392, 2015 WL 518774 (W.D. Tex. Feb. 5, 2015) (discussing forty-seven meritless federal lawsuits filed by Emrit since March 2013 and entering a vexatious litigant order against Plaintiff); Emrit v. Soc. Sec. Admin., 2:14-cv-01760, 2015 WL 4597834 (D. Nev. July 29, 2015) (entering vexatious litigant order against Emrit); Emrit v. Continuum Legal, 1:16-CV-1424, 2017 WL 2622368, *2 (E.D. Va. Jan. 31, 2017) ("Plaintiff is a serial pro se litigant who is subject to pre-filing injunctions in at least two courts."); Emrit v. Sec. of State, 16-CV-610-S, 2017 WL 3209449 (D.R.I. Jan. 9, 2017) (noting that plaintiff has been declared a "vexatious filer" in several districts and enjoined from further filings without leave of court). See also Emrit v. Am. Commc'ns Network, Inc., 583 F. App'x. 46, 47 (4th Cir. 2014) (cautioning Emrit "that federal courts, including this court, are authorized to impose sanctions upon vexatious and repetitive litigants for frivolous filings [and warning him that] [f]urther frivolous filings by Emrit may result in this court sanctioning him, including by ordering a prefiling injunction that limits his access to the court") (citation omitted).

Emrit v. Sec'y of Hawaii, 17-CV-00504, 2018 WL 264851, at *2 n.2 (D. Haw. Jan. 2, 2018). See also Emrit v. Devos, 8:20-cv-00773, 2020 WL 9078298, at *1 (M.D. Fla. Apr. 20, 2020) (enjoining Emrit from filing any document in the district without prior court approval); Emrit v. Simon, 17-cv-04605 SRN-SER (D. Minn. Dec. 8, 2017), Dkt. Nos. 4

---

hundreds of cases and appeals in the federal courts alone" and recommending pre-filing sanctions barring further abusive conduct); Emrit v. Nat'l Acad. of Recording Arts & Scis., A-14-CA-392-SS, 2015 WL 518774, at *4 (W.D. Tex. Feb. 5, 2015) ("Emrit has been repeatedly warned against filing meritless and frivolous claims by this and other courts. As is demonstrated by his national filing history, Emrit abuses the *in forma pauperis* process and clogs the federal district courts with meritless litigation.")

and 9 (dismissing Emrit's claims with prejudice and ordering that he be restricted from filing new cases in the district unless represented by licensed counsel, or with prior written authorization from a judicial officer, while noting that Emrit has initiated approximately 150 federal lawsuits since 2013).

"Notwithstanding such sanctions and admonishments, as well as a resounding lack of success in the federal courts that would give pause to most litigants, Plaintiff has given no hint of abating his pernicious conduct." Trump, 2019 WL 140107, at *2. Plaintiff's continued scattershot filings fail to heed numerous district courts' efforts to explain in detail the federal venue requirements and the specific deficiencies in his pleadings under Rule 8 of the Federal Rules of Civil Procedure.[3]

---

[3] See, e.g., Emrit v. Sec'y, U.S. Dep't of Educ., 829 F. App'x 474, 475 (11th Cir. 2020) (affirming district court's *sua sponte* dismissal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), as an abuse of the judicial process, and for improper venue); Emrit v. Holland & Knight, *LLP*, 693 F. App'x 186, 187 (4th Cir. 2017) (concluding that Emrit's "patently frivolous . . . complaint was properly subject to dismissal under 28 U.S.C § 1915(e)(2)(B)(i)"); Emrit v. Hardy, 692 F. App'x 705, 706 (4th Cir. 2017) (finding that dismissal, rather than transfer of venue, appropriate when Emrit's complaint "patently failed" to state a viable claim); Emrit v. Cegavske, 692 F. App'x 706 (4th Cir. 2017) ("Our review of Emrit's complaint reveals that it is patently frivolous"); Emrit v. Nevada Dep't of Motor Vehicles, 692 F. App'x 707, 708 (4th Cir. 2017) (affirming dismissal when "the interests of justice did not require transferring" venue); Emrit v. DeVos, 20-CV-266, 2021 WL 913646, at *2 (S.D. Cal. Mar. 10, 2021) (concluding that, "[a]lthough Emrit's complaint could be transferred based on improper venue . . . the better course of action [is] to dismiss the case at the outset rather than burden another court with a facially frivolous suit" that was "identical [to] actions in at least ten other federal district courts throughout the United States" and contained "allegations [that] [we]re conclusory and lack[ed] an arguable basis in law and fact"); Emrit v. Horus Music Video Distribution, 20-CV-00007, 2020 WL 1822597, at *4 (D. Haw. Apr. 10, 2020), *appeal dismissed*, 20-15916, 2020 WL 6588744 (9th Cir. July 24, 2020) (finding that Emrit's "Complaint alleges no plausible basis for venue in the District of Hawaii"); Emrit v. Fed. Bureau of Investigation, 20-CV-30018, 2020 WL 4004032, at *2 (D. Mass. Apr. 8, 2020), *report and recommendation adopted*, 20-CV-30018, 2020 WL 4003264 (D. Mass. July 15, 2020) (finding dismissal warranted when Emrit's complaint alleged "no factual allegations linking his purported claims to the FBI" and venue was improper); Emrit v. Nat'l Football League, 20-CV-00062, 2020 WL 619526, at *2 n.1 (S.D. Cal. Feb. 10, 2020) (dismissing with prejudice "[i]n light of the fact that all allegations in Plaintiff's instant Complaint have been previously litigated or are already pending before other courts" and venue was improper); Emrit v. Desert Parkway Behav. Hosp., 18-CV-00435, 2019 WL 2397801, at *4 (D. Haw. June 6, 2019) (dismissing Emrit's complaint with prejudice based on improper venue); Emrit v. Soros, 19-CV-00125, 2019 WL 1923629, at *2 (D. Haw. Apr. 30, 2019) (dismissing Emrit's complaint *sua sponte* pursuant to § 1915(e)(2)(B) for failure to state a claim); Emrit v. NH Sec'y of State, 17-CV-489-PB, 2018 WL 6834596, at *1 (D.N.H. Dec. 27, 2018) (dismissing Emrit's action for failure to state a claim); Emrit v. Montevista Mental Hosp., 18-CV-00443, 2018 WL 6978092, at *2 (D. Haw. Dec. 21, 2018), report and recommendation adopted, 18-CV-00443 ACK-KJM, 2019 WL 123872 (D. Haw. Jan. 7, 2019) (dismissing Emrit's complaint for lack of venue); Emrit v. Hammond, 3:17-CV-02736, 2018 WL 2118021, at *1 (D.S.C. May 8, 2018) (dismissing Emrit's claims); Emrit v. Condos, 5:17-CV-0204-GWE (D. Vt. May 3, 2018) (dismissing for lack of jurisdiction); Emrit v. Denney, 1:17-CV-00411, 2018 WL 1865159,

Despite the consistent decisions of multiple district courts explaining why his filings are improper, Plaintiff continues to initiate strikingly similar and/or duplicative lawsuits in federal forums that bear no relation to the allegations set forth in his pleadings. As the U.S. District Court for the Middle District of Florida explained, "savvy and experienced *pro se* litigants, such as Emrit, understand the legal system's reluctance to sanction them and use it to their advantage," knowing that, despite "obviously not proceeding in good faith," the "courts will generally give them the benefit of the doubt and there will be few or no consequences to their actions." *Devos*, 2020 WL 9078298, at *3.

## B.     Plaintiff's Current Complaint

Continuing with the same pattern of conduct, on March 7, 2022, Plaintiff—appearing *pro se*—filed a Complaint against the Central Intelligence Agency ("CIA"), the National Security Council ("NSC") and the Director of National Intelligence ("DNI"). ECF No. 1. Plaintiff alleges in the Complaint that he is "an indigent, disabled, and

---

at *1 (D. Idaho Apr. 18, 2018) (dismissing complaint with prejudice); Emrit v. Dunlap, 1:17-CV-402, 2018 WL 1321567 (D. Me. Mar. 14, 2018), *appeal dismissed*, 18-1221, 2018 WL 4381529 (1st Cir. June 12, 2018) (dismissing for lack of jurisdiction); Emrit v. Kan. Sec'y of State, 2:17-CV-2593 (D. Kan. Feb. 13, 2018) (dismissing for failure to state a claim); Emrit v. Silrum, 1:17-CV-212, 2018 WL 10152596, at *1 (D.N.D. Feb. 7, 2018) (dismissing Emrit's claims as "frivolous"); Emrit v. Oliver, 17-CV-1024, 2018 WL 626254, at *3 (D.N.M. Jan. 30, 2018), *aff'd*, 735 F. App'x 501 (10th Cir. 2018) (dismissing Emrit's claims); Emrit v. Gale, 4;17-CV-3133, 2018 WL 618414, at *6 (D. Neb. Jan. 29, 2018) (finding that Emrit's complaint failed to state a claim for relief); Emrit v. Sec'y of State of Alaska, 5:17-CV-00006-SLG, 2017 WL 11556648, at *3 (D. Alaska Dec. 11, 2017) (dismissing complaint as frivolous and "devoid of any factual allegations of specific wrongs committed" by the defendants when "the factual allegations Mr. Emrit proffers run the gamut of Mr. Emrit being bumped into by a child while standing in a Wal-Mart pharmacy line in Texas, to his admiration of actresses Livia Brito and Adriana Lima, to the activities of numerous political public figures"); Emrit v. Wyo. Sec. of State, 2:17-cv-00174-SWS (D. Wyo. Oct. 31, 2017), Dkt. No. 3 (dismissing case); Emrit v. Johnson, 2:17-cv-13337 GCS-RSW (E.D. Mich. Oct. 19, 2017), Dkt. No. 4 (dismissing with prejudice Emrit's claims as frivolous); Emrit v. Lawson, 1:17-CV-03624, 2017 WL 4699279, at *3 (S.D. Ind. Oct. 19, 2017) (concluding that Emrit's "action is patently frivolous and therefore subject to dismissal under 28 U.S.C. § 1915(e)(2)," noting that "Mr. Emrit has a long history of filing *pro se* frivolous litigation in other districts and has been barred from filing in several of them," and warning that "the Court will not hesitate to impose a filing bar sanction if he proceeds to file any additional frivolous cases in this Court"); Emrit v. Marion Cty. Hous. Auth., 3:16-cv-1854, 2017 WL 743882, *4 (D. Ore. Feb. 23, 2017) (dismissing Emrit's claims with prejudice and noting that Emrit "has filed complaints in numerous other districts in which he brings claims that are nearly identical"); Emrit v. Heck, 17-CV-74, 2017 WL 5624943, at *1 (D. Md. Jan. 26, 2017) (finding dismissal appropriate when "the claim asserted here is frivolous" and transfer would not be in "the interest of justice").

unemployed resident of the state of Florida," and that he "lives in Florida much of the time and lives in Maryland at some other times." Id. at 6. Without elaboration, he alleges that venue is proper in this Court "pursuant to 28 U.S.C.A. Sections 1391 and 1400." Id. at 7.

The vast majority of the factual allegations in Plaintiff's twenty-five-page-long Complaint are rambling, disjointed, fantastical, or nonsensical, and have no relation to any purported conduct by the named Defendants. [4] Interspersed with musings about outer space and historical figures such as Napoleon Bonaparte and Cleopatra, lists of professional football players, summaries of irrelevant Supreme Court opinions, and perceived connections between random acronyms, Plaintiff's central assertion appears to be that, as an "African-American" whose middle name is "Satish," he has "struggle[d] with being racially-profiled by [the] FBI and CIA . . . as an Arab, Middle Easterner, or Muslim." Id. at 10, 19-20. First, Plaintiff believes that beginning in 2001 or 2002, he was "racially-profiled" due to his "phenotype" by employees of the law school he attended in Miami Gardens, Florida, when employees of the law school purportedly implied that he was associated with Al Qaeda. Id. at 9-10. Second, in 2003 or 2004, he "had a conversation with 'Faye' from CIA," who allegedly mentioned to Plaintiff that "she knew that the plaintiff was on his way to a bar review course for the Maryland bar examination." Id. at

---

[4] A representative example of the type of allegations described is set forth in paragraph four of the Complaint, which states in full as follows:

> In addition, the publication known as The World Factbook has been outsourced to a private company 'doing business as' (d/b/a) Skyhorse Publishing which reminds the plaintiff of the Horsehead Nebula, Cat's Eye Nebula, Tarantula Nebula, and Crab Nebula which has a crab pulsar, i.e. a neutron star that is formed when a white dwarf star reaches its Chandrasekhar Limit of 1.4 solar masses and can no longer withstand gravity notwithstanding the electron degeneracy pressure keeping the star from collapsing. In the field of marine biology, a seahorse has been known to change its gender and the plaintiff had a seahorse screensaver on his computer in Bowie, Maryland around 2005.

ECF No. 1 at 2-3.

12. Third, in 2009, Plaintiff wrote to the CIA to inquire about that agency's role in building the Panama Canal; he alleges that in response to this inquiry, he received an email from the agency informing him that the Panama Canal had been built before the CIA was formed in 1947. Id. at 8. Fourth, Plaintiff asserts that in 2009 he "applied for a position of employment as a clandestine agent" with the CIA, but "was never formally offered a position of employment." Id. at 11. He claims he also applied for "a position of employment" with the National Security Agency ("NSA") at an undisclosed time. Id. Fifth, Plaintiff asserts that his ex-girlfriend told him on one occasion that he may have been "racially-profiled as ISIS/ISIL" by "the U.S. postal inspector of Henderson, Nevada . . . because his middle name 'Satish' sounds Arabic." Id. at 10.

In addition to these vague factual allegations, Plaintiff's Complaint makes several conclusory allegations. First, Plaintiff alleges that the CIA "racially profil[ed] the plaintiff as an Arab, Middle Easterner, or Muslim around 2001," but omits any description of the conduct that constituted this alleged racial profiling. Id. at 20. Similarly, Plaintiff alleges that:

> any federal, state, or local laws/regulations (restricting the plaintiff from being on the ballot in this particular state for the primary and general election (assuming that the CIA plays a large role in monitoring the election process in 2020 and beyond) and profiling the plaintiff as an Arab, Middle Easterner, or Muslim) must pass a strict scrutiny test.

Id. at 19, ¶74. Again, Plaintiff omits any factual allegations regarding the conduct that constituted this alleged "profiling;" nor does he identify what "laws/regulations" purportedly restricted him from being on any ballot, any identification of the election to which he refers, or the CIA's specific "role" in any ballot restrictions. See id. Finally, Plaintiff alleges that "it would also be an Equal Protection violation to subject the plaintiff to counterintelligence or COUNTERINTELPRO or get a FISA warrant simply because the

plaintiff had a Cuban fiancé in 1999 . . . or to consider the plaintiff to be a 'person of interest' in the same investigation involving Steven Hatfill's harassment lawsuit against the FBI when the plaintiff was merely an apprentice or intern at NIH/NHLBI/DHVD." Id. at 20, ¶76. It is unclear what agency, if any, Plaintiff alleges committed the purported "Equal Protection violation," and the Complaint fails to allege facts that describe how Plaintiff was purportedly subjected to counterintelligence or investigated as a person of interest. See id. Likewise, due to the conditional "would be" language, it is unclear if Plaintiff is even alleging that an Equal Protection violation occurred. See id.

Based upon his conclusion that the CIA "racially-profil[ed] the plaintiff as Al Qaeda and ISIS/ISIL without any reasonable suspicion or probable cause other than the fact that the plaintiff's middle name is 'Satish' which is Hindu and not Arabic," Plaintiff alleges that the CIA committed "the intentional infliction of emotional distress (IIED) . . . the invasion of privacy through intrusion upon seclusion . . . the invasion of privacy through misappropriation . . . the invasion of privacy through 'false light,' [and] . . . negligence..." or gross negligence. Id. at 16-18, 22. Plaintiff also asserts that [6] "defendant CIA committed the wrongful institution of legal proceedings and/or malicious prosecution by racially profiling the plaintiff as an Arab, Middle Easterner, or Muslim around 2001." Id. at 18-20. The "Prayer for Relief" also asserts:

> the sole defendant Central Intelligence Agency (CIA) committed a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA). Furthermore, the sole defendant Central Intelligence Agency (CIA acting on behalf of the executive branch of the federal government and its previous directors including the Director of National Intelligence (DNI)) has violated the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution in addition to having violated the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution, the Fourth Amendment rights to a "reasonable expectation of privacy" (see ***Katz v.***

> ***United States***, supra) and perhaps invoking a broad assertion and interpretation of the Eighth Amendment right to be free from cruel and unusual punishment.

Id. at 22. Plaintiff seeks "a judgment in the amount of $80,000 (eighty thousand dollars)," Id. at 22, as well as "declaratory relief" according to Rule 57 of the Federal Rules of Civil Procedure in the form of a statement issued by the Court "regarding free speech and racial profiling" and to "preclude the CIA, NSA, or FBI from racially-profiling the plaintiff any further after this litigation" and to "'cease and desist' conducting surveillance and/or COINTELPRO on the plaintiff." Id. at 2, 17, 23.

The Court further takes judicial notice that Plaintiff initiated a duplicative action in the U.S. District Court for the Southern District of West Virginia on March 7, 2022—the same date that he initiated the instant action in this district. See Emrit v. Cent. Intelligence Agency, 2:22-CV-119 (S.D. W. Va. Mar. 7, 2022). Plaintiff indicates in both Complaints that he also "is filing this cause of action in the U.S. District Courts of Maryland, Eastern Virginia, and Western Virginia in Charlottesville because of the fact that the plaintiff does not know which location has exclusive, original or subject matter jurisdiction." ECF No. 1 at 5.

## II.  *SUA SPONTE* SCREENING

Generally, all parties instituting a civil action in a district court of the United States must pay a filing fee of $350.00 and an administrative fee of $52.00. 28 U.S.C.A. § 1914(a) (2020); District Court Miscellaneous Fee Schedule, Judicial Conference of the United States (Dec. 1, 2020) (issued in accordance with 28 U.S.C. § 1914). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). The Court grants leave to proceed IFP when a plaintiff submits an affidavit, including a statement of all of his assets,

demonstrating his inability to pay the statutory filing fee. See id. Importantly, "proceeding *in forma pauperis* is a privilege, not a right, and permission to so proceed is committed to the sound discretion of the court." Grass v. E. Associated Coal Corp., 2:05-CV-0496, 2007 WL 9718153, at *2 (S.D. W. Va. Oct. 24, 2007) (citing Camp v. Oliver, 798 F.2d 434, 437 (11th Cir. 1986); Carter v. Thomas, 527 F.2d 1332 (5th Cir. 1976)). See also Jones v. Wichita, 20-CV-1142, 2020 WL 2850170 (D. Kan. June 2, 2020) (quoting White v. Colorado, 157 F.3d 1226, 1233 (10th Cir. 1998) ("Proceeding in forma pauperis in a civil case 'is a privilege, not a right—fundamental or otherwise.'")).

When a plaintiff seeks leave to proceed IFP, the district court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact" pursuant to 28 U.S.C. § 1915(e). Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656 (4th Cir. 2006) (citing Nasim v. Warden, 64 F.3d 951, 953–54 (4th Cir. 1995)).  The district court *must* "dismiss a complaint filed [IFP] 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" Eriline Co., 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)(2)(B)). "The overriding goal in policing [IFP] complaints is to ensure that the . . . mechanism of § 1915(b) does not subsidize suits that prepaid administrative costs would otherwise have deterred." Nagy v. FMC Butner, 376 F.3d 252, 256-57 (4th Cir. 2004).

Likewise, "the court has the power to consider *sua sponte* whether venue is proper" pursuant to its inherent power "to control and protect the administration of court proceedings." Jennings v. Adams, No. 2:20-CV-00780, 2020 WL 7763339, at *1 (Dec. 4, 2020), *report and recommendation adopted*, 2020 WL 7753103 (S.D.W. Va. Dec. 29, 2020). It is appropriate for a district court to dismiss, rather than transfer, an action

based upon a finding of improper venue when a plaintiff has "committed an obvious error in filing his action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993).

Upon review of Plaintiff's request to proceed IFP in this Court [ECF No. 2], it appears that Plaintiff qualifies as a pauper pursuant to 28 U.S.C. § 1915(a)(1).[5] However, the undersigned finds that Plaintiff should not be granted leave to proceed IFP because his conduct continues to improperly waste judicial resources and abuse the IFP privilege as a tool to "subsidize suits that prepaid administrative costs would otherwise have deterred." Nagy, 376 F.3d at 256-57. Further, the undersigned finds that Plaintiff's Complaint should be dismissed for three reasons. First, the allegations in the Complaint provide no basis for venue in this Court; second, the Complaint fails to meet the liberal pleading requirements pursuant to Rule 8 of the Federal Rules of Civil Procedure; and third, this civil action is patently frivolous. The undersigned will address each of these in turn.

## A.    There Is No Basis for Venue in this Court.

The undersigned first finds that dismissal is proper because there is no basis in the Complaint for venue in the U.S. District Court for the Northern District of West Virginia. Plaintiff's Complaint baldly asserts that venue is proper in this Court "pursuant to 28 U.S.C.A. Sections 1391 and 1400." ECF No. 1 at 7. Neither statute establishes venue in this Court. The latter, which primarily concerns patents and copyrights, is clearly

---

[5] The application indicates Plaintiff is unemployed and has received $900.00 per month in disability benefits as well as $30.00 per month in public-assistance benefits during the twelve months prior to filing his complaint. Id. at 2. Plaintiff states that he has one checking account with a balance of approximately $15.00; that he has no income from real property, investments, retirement accounts, gifts, or alimony; that he has no dependents; and that he anticipates no major changes to his income over the next twelve months. Id. at 1-5. In contrast, Plaintiff claims monthly expenses in the total amount of $790.00. Id. at 5.

inapplicable to Plaintiff's allegations of racial profiling by the Defendants. See 28 U.S.C. § 1400.

The former statute provides in relevant part that where—as here—all the defendants are officers, employees, or agencies of the United States, venue is generally limited to a "judicial district" in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides[.]" 28 U.S.C. § 1391(e). None of these apply. Plaintiff does not allege that any of the Defendants reside in West Virginia under § 1931(e)(1)(A); rather, Plaintiff asserts that Defendant NSC is headquartered in Maryland, Defendant CIA "has its principal place of business" in Virginia, and Defendant DNI is seated in Washington, D.C.  ECF No. 2 at 5, 7.) Turning to § 1391(e)(1)(B), Plaintiff makes no allegation of any events taking place in West Virginia at all, let alone a "substantial" portion of the events alleged in the Complaint; rather, Plaintiff alleges that the events took place in either Florida, Maryland, or Nevada. See id. Nor is there any real property at issue in this action. See id. Third and finally, under 28 U.S.C. § 1391(e)(1)(C), Plaintiff asserts that he resides either in Florida or Maryland. Id. at 5. In fact, West Virginia is not mentioned in Plaintiff's Complaint at all. See generally id.

By initiating this action in a judicial district where venue plainly does not lie, Plaintiff "committed an obvious error in filing his action in the wrong court, and thereby imposed substantial unnecessary costs on . . . the judicial system." Nichols, 991 F.2d at 1201. Plaintiff continues to repeat this obvious error despite five prior orders of the U.S. District Court for the Southern District of West Virginia transferring prior civil actions he filed IFP to other district courts. Moreover, as addressed at length, *supra*, Plaintiff's

conduct is particularly concerning when taken in context with the well-documented, near-unanimous orders from multiple other district courts dismissing hundreds of prior actions on the same basis. Thus, although it would be more expedient for this Court to transfer Plaintiff's current complaint to another venue—such as the Middle District of Florida, wherein Plaintiff resides—the undersigned finds that transfer is not in the interests of justice under the circumstances. <u>Heck</u>, 2017 WL 5624943, at *1; <u>Sec'y, U.S. Dep't of Educ.,</u> 829 F. App'x at 477-78. As another district court recently noted, "[m]erely 'kicking the can' by transferring venue or issuing a warning clearly would be of no benefit to Plaintiff, to this Court, or to any other federal court to which Plaintiff's case might be transferred." <u>Trump</u>, 2019 WL 140107, at *5. In the instant case, the undersigned therefore "concludes that the better course of action is to recommend dismissal at the outset rather than to burden another federal court with this frivolous action." <u>Id.</u> at *3.

### B.  The Complaint Fails to Meet Minimum Pleading Requirements.

Dismissal is also proper because Plaintiff's Complaint characteristically "fails to include sufficient factual matter to state any plausible claim against any Defendant." <u>Trump</u>, 2019 WL 140107, at *4. Congress authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). While *pro se* complaints are generally held to less stringent standards than those drafted by attorneys, and must be liberally construed in favor of the plaintiff, a complaint must nonetheless "give [a] defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam); <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972).

This standard requires a complaint to "plead[] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). See also Thomas v. Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (applying Iqbal and Twombly pleading standard to initial screening of a complaint pursuant to 28 U.S.C. § 1915(e)); Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (explaining that the "dismissal standard articulated in Iqbal and Twombly governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)). Under this standard, the Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Nor is it sufficient for a complaint to offer mere "labels and conclusions," "naked assertion[s]" devoid of "further factual enhancement," or "an unadorned, the-defendant-unlawfully-harmed-me accusation." Twombly, 550 U.S. at 555, 557; Iqbal, 556 U.S. at 678.

Here, "[e]ven construing his pleading liberally, [Plaintiff's] claims lack merit in either fact or law." Sec'y, U.S. Dep't of Educ., 829 F. App'x at 477. Plaintiff concludes that the CIA "racially profil[ed] the plaintiff as an Arab, Middle Easterner, or Muslim around 2001," but the Complaint does not provide the Defendants with notice of the alleged conduct that constituted racial profiling. Id. at 20. Similarly, Plaintiff alleges that "...any federal, state, or local laws/regulations" which restricted him "from being on the ballot in this particular state for the primary and general election (assuming that the CIA plays a large role in monitoring the election process in 2020 and beyond) and profiling the plaintiff [] . . . must pass a strict scrutiny test...." Id. at 19. However, Plaintiff again does not allege any facts regarding the conduct that constituted profiling; nor does he identify what "laws/regulations" purportedly restricted him from being on the ballot, to what "primary and general election" he refers, to what "particular state" he refers, or the

Defendants' alleged "role," if any, in such restriction. <u>See id.</u> Finally, Plaintiff alleges that "it would also be an Equal Protection violation to subject the plaintiff to counterintelligence or COUNTERINTELPRO or get a FISA warrant simply because the plaintiff had a Cuban fiancé in 1999 . . . or to consider the plaintiff to be a 'person of interest' in the same investigation involving Steven Hatfill's harassment lawsuit against the FBI when the plaintiff was merely an apprentice or intern at NIH/NHLBI/DHVD." <u>Id.</u> at 20. It is unclear what agency, if any, Plaintiff alleges committed the purported "Equal Protection violation." <u>See id.</u> Likewise, due to the conditional "would be" language, it is unclear if Plaintiff is even alleging that an Equal Protection violation occurred. <u>See id.</u>

These vague allegations make up the very "labels and conclusions," "naked assertion[s]" devoid of "further factual enhancement," and "unadorned, the-defendant-unlawfully-harmed-me accusation" prohibited by <u>Twombly</u>, 550 U.S. at 555, 557, and <u>Iqbal</u>, 556 U.S. at 678. It is axiomatic that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 545. Here, however, even assuming that all of these allegations are true, the Complaint falls far short of showing that Plaintiff is entitled to relief.

Moreover, the remainder of Plaintiff's allegations are rife with improper legal conclusions "couched as [] factual allegation[s]." <u>Twombly</u>, 550 U.S. at 555. For instance, based upon his conclusion that the CIA "racially-profil[ed] the plaintiff as Al Qaeda and ISIS/ISIL without any reasonable suspicion or probable cause other than the fact that the plaintiff's middle name is 'Satish' which is Hindu and not Arabic," Plaintiff alleges that the CIA committed "the intentional infliction of emotional distress (IIED) . . . the invasion

of privacy through intrusion upon seclusion . . . the invasion of privacy through misappropriation . . . the invasion of privacy through 'false light,' [and] . . . negligence…" or gross negligence. Id. at 16-18, 22. Plaintiff also asserts that "defendant CIA committed the wrongful institution of legal proceedings and/or malicious prosecution by racially profiling the plaintiff as an Arab, Middle Easterner, or Muslim around 2001." Id. at 18-20. However, Plaintiff fails to connect any factual allegation with the elements of these tort claims. Devos, 2020 WL 1279205, at *1; Sec'y, U.S. Dep't of Educ., 829 F. App'x at 477.

Plaintiff's vague allegations are likewise wholly insufficient to state a cognizable federal claim. Plaintiff's constitutional and Title VII claims appear to be based on the fact that he is African-American, "but he draws no connection between his race" and any unlawful conduct by any named Defendant "beyond the conclusory contention that he is entitled to strict scrutiny," see ECF No. 1 at 19. Devos, 2020 WL 1279205, at *1. There are simply no factual allegations linking Plaintiff's purported claims to any conduct by the named federal agencies or any of their representatives, agents, or employees.

As the District of Massachusetts explained to Plaintiff in a strikingly similar suit against the FBI, "[t]o the extent that plaintiff wishes to raise a federal civil rights claim against an officer or employee of the [federal agency], he must identify each individual, set forth a short and plain statement of each claim showing that a specific individual took a specific action, participated in another's action, or omitted to perform an action that caused each alleged constitutional deprivation." *Fed. Bureau of Investigation*, 2020 WL 4004032, at *2. Just as in that case, here Plaintiff "fails to make specific factual allegations against any individual." [6] Id.

_____

[6] Furthermore, while Plaintiff appears to seek relief pursuant to 42 U.S.C. § 1983, (*see* ECF No. 2 at 22),

In sum, without any factual allegations to explain what conduct any of these claims rest upon, the Complaint wholly "fails to allege a minimum factual basis for any claim that is sufficient to give any purported defendant fair notice of what plaintiff's claims are and the grounds upon which they rest." Fed. Bureau of Investigation, 2020 WL 4004032, at *2; see also Erickson, 551 U.S. at 93-94. Thus, dismissal is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.   **Plaintiff's Claims are Frivolous.**

Finally, dismissal is also warranted pursuant to 28 U.S.C. § 1915(e) because—just as numerous other district courts consistently found under strikingly similar circumstances—Plaintiff's claims are frivolous and duplicative. When screening an initial filing to assess the merits of an IFP complaint, courts must "conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing on the frivolity of a claim." Nagy, 376 F.3d at 257. In general, however, "a complaint 'is frivolous where it lacks an arguable basis either in law or in fact.'" Id. at 256-57 (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). An action has no arguable factual basis when the allegations are delusional or rise to the level of irrational or "wholly incredible." Denton v. Hernandez, 504 U.S. 25, 32 (1992). The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. Neitzke, 490 U.S. at 328.

Without a doubt, the "wholly incredible" and delusional factual allegations set

---

"[i]t is well-established that the proper vehicle for a civil rights claim against a person acting under color of federal law is a *Bivens* action. Fed. Bureau of Investigation, 2020 WL 4004032, at *2 (citing Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)). However, a Bivens action "authorizes suits against federal officers in their individual capacities" only, and "suits against the federal government, its agencies, and federal agents acting in their official capacities" are barred by sovereign immunity. Id.  Thus, "[t]o the extent that Emrit is attempting to assert a Bivens claim, there are no factual allegations establishing that any individual [CIA or NSC] agent violated any of Plaintiff's constitutional rights." Id.

forth in Plaintiff's Complaint rise to the level of irrationality that requires dismissal. Denton, 504 U.S. at 32; Neitzke, 490 U.S. at 328. Plaintiff appears to speculate that he was somehow "racially-profiled by [the] FBI and CIA" based upon unconnected events such as an alleged 2003 conversation "with 'Faye' from CIA" regarding the Maryland bar examination, a comment from Plaintiff's ex-girlfriend speculating as to the motivations of a postal inspector in Nevada for unknown conduct that Plaintiff asserts constituted racial profiling, and Plaintiff's 2009 application "for a position of employment as a clandestine agent" with the CIA and NSA. ECF No. 1 at 10-12, 19-20. Not only are Plaintiff's description of these events vague and inscrutable, but they are interspersed with nonsensical ramblings about space nebulae, historical figures, professional football players, irrelevant Supreme Court opinions, and perceived connections between random acronyms. *See id*. Because the Complaint as a whole is completely irrational and lacks any arguable factual basis, therefore, the Complaint is "frivolous under § 1915(e)(2)(B)." Devos, 2020 WL 1279205.

The frivolousness of this action is further compounded by the fact that it is knowingly duplicative of actions Plaintiff filed in neighboring district courts. As set forth in Section I.B., *supra*, Plaintiff filed an identical complaint in the Southern District of West Virginia on the same day that he initiated this action; both complaints state that Plaintiff also filed the same cause of action in the District of Maryland and the Eastern and Western Districts of Virginia. ECF No. 1 at 5. Plaintiff's scattershot approach to filing duplicative complaints is nothing new. As the Northern District of Florida recently observed, "Plaintiff has an apparent penchant for filing the same case simultaneously in multiple districts. This case is an example." *Devos*, 2020 WL 1669872, at *1 (noting that Plaintiff had filed "the identical complaint" in seven other district courts). See also Devos,

2020 WL 9078298, at *2 (noting that Plaintiff filed identical lawsuits "in at least ten other jurisdictions, in addition to the multitude of other meritless and frivolous lawsuits that he is pursuing across the United States at this time"). This pattern continues even though Plaintiff has been explicitly informed that "[i]t is clearly improper and an abuse of the judicial process to pursue identical claims in multiple jurisdictions." *Devos*, 2020 WL 1669872, at *2. Simply put, in the face of consistent court orders specifically explaining the errors in his litigation conduct, Plaintiff simply had no good-faith basis to initiate the instant action in this district.

Plaintiff's bad-faith conduct continues to impose substantial, unnecessary costs on the judicial system, and waste judicial resources. As the Western District of Texas explained when it dismissed Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Emrit's *pro se* status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Nat'l Acad. of Recording Arts & Scis., 2015 WL 518774, at *2, 4. Thus, in view of the patent frivolity of Plaintiff's claims, Plaintiff's prior notice by numerous federal courts of the impropriety of such filings, and Plaintiff's continued, well-documented abuse of the judicial process, the undersigned recommends that Plaintiff's Application to Proceed Without Prepayment of Fees and Costs [ECF No. 2]be denied, and that the Complaint [ECF No. 1] be dismissed with prejudice pursuant to § 1915(e)(2)(B).

### III.   **PREFILING SANCTIONS**

Further, prefiling sanctions are necessary to deter Plaintiff from further abuse of the IFP privilege in this Court and to protect the public and the Court from further waste of judicial resources. The undersigned therefore recommends that—consistent with

numerous other district courts—Plaintiff be declared a "vexatious" litigant and his IFP privilege be appropriately limited. This Court is authorized to impose such sanctions under the circumstances, because "the All Writs Act, 28 U.S.C. § 1651(a), empowers federal district courts to enjoin vexatious litigants who have a history of abusing the court's limited resources." Soc. Sec. Admin., 2015 WL 4597834, at *4 (finding that Plaintiff was a vexatious litigant and enjoining him from making further filings absent prior leave of court). See also Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817 (4th Cir. 2004) ("Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants[.]"). The Fourth Circuit set forth four factors that "a district court should consider," along with all the relevant circumstances, "in deciding whether to issue a prefiling injunction" as a sanction. Thomas v. Fulton, 260 F. App'x 594, 596 (4th Cir. 2008) [hereinafter referred to as the Thomas factors]. First, the Court must consider Plaintiff's "history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits." Id. Second, the Court must consider whether Plaintiff "had a good faith basis for pursuing the litigation, or simply intended to harass." Id. Third, the Court must consider "the extent of the burden on the courts and other parties resulting from the [Plaintiff's] filings." Id. Fourth and finally, the Court must consider "the adequacy of alternative sanctions." Id. While such an injunction should be used sparingly and "remain very much the exception to the general rule of free access to the courts," the Fourth Circuit explained that a district judge may limit a litigant's access to the courts in "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." Cromer, 390 F.3d at 818 (citing Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993)). There can be no question in this case that Plaintiff's

continued abuse of the IFP privilege—clogging the district courts' dockets with meritless, duplicative, and repetitious actions—forms precisely the "exigent circumstances" contemplated by the Fourth Circuit in *Cromer* and satisfies all four <u>Thomas</u> factors. 390 F.3d at 818.

The first <u>Thomas</u> factor, Plaintiff's history of litigation, weighs strongly in favor of sanctions. <u>Thomas</u>, 260 F. App'x at 596. As set forth in detail in Section I.A., *supra*, the Plaintiff's decade-long, "unusually extensive nationwide litigation history" of frivolous, duplicative suits is well-documented by district courts across the country. <u>Trump</u>, 2019 WL 140107, at *3; <u>see also Nat'l Acad. of Recording Arts & Scis.</u>, 2015 WL 518774, at *3 (stating that Plaintiff "certainly has such a history of submitting multiple frivolous claims"); <u>Fed. Bureau of Investigation</u>, 2020 WL 731171, at *1 n.1 ("Plaintiff has a history of abusing the IFP privilege and Plaintiff has been acknowledged as a vexatious litigator in at least six district courts."); <u>Universal Music Grp.</u>, 2019 WL 6251365, at *2 (same); <u>Soc. Sec. Admin.</u>, 2015 WL 4597834, at *9 (declaring Plaintiff to be a vexatious litigant pursuant to 28 U.S.C. § 1651(a) and enjoining Plaintiff "from filing any complaint, petition, or other document in this court without first obtaining leave of this court"). Most or all of these complaints have been dismissed for improper venue or failure to state a claim, including five cases in the Southern District of West Virginia—all of which were transferred by this Court to either the District of Maryland or Western District of Pennsylvania based upon improper venue. <u>See</u> notes 3 and 4, *supra*; <u>see also Fed. Bureau of Investigation</u>, 2020 WL 731171, at *1. As the District of Nevada explained, Plaintiff's pattern of conduct rises above mere litigiousness, "amounting to a pattern of harassing litigation." <u>Soc. Sec. Admin.</u>, 2015 WL 4597834, at *8. <u>See also Universal Music Grp.</u>, 2019 WL 6251365, at *2 (finding a complaint to be "part of [Plaintiff's]

ongoing and persistent pattern of abusing the IFP privilege by filing vexatious, harassing, and duplicative lawsuits").

The second *Thomas* factor also weighs in favor of sanctions because Plaintiff lacked "a good faith basis for pursuing the litigation." Thomas, 260 F. App'x at 596. As an extraordinarily prolific serial plaintiff in the federal courts, Emrit is described as a "savvy and experienced *pro se* litigant" who "is more than familiar with his federal court filing and pleading responsibilities." Devos, 2020 WL 9078298, at *3; see also Sec'y of Hawaii, 2018 WL 264851, at *2. In this case, Plaintiff continues to flout repeated warnings of the consequences of his failure to meet those responsibilities. See Nat'l Acad. of Recording Arts & Scis., 2015 WL 518774, at *2, 4 (explaining that "Emrit has been repeatedly warned against filing meritless and frivolous claims by this and other courts").

Plaintiff particularly demonstrates a lack of good faith under this second *Thomas* factor with his "repetitive filing of cases with no possible venue." Trump, 2019 WL 140107, at *3; Sec'y, U.S. Dep't of Educ., 829 F. App'x at 477 (finding that Emrit "filed this case simultaneously in multiple districts, thus abusing the judicial process" and, further, that "his multiple simultaneous and identical filings belie . . . that he is a 'vexatious filer,' as do his filings of some 260 *pro se* civil cases in federal courts across the country"). Plaintiff has been expressly notified of the minimum pleading requirement to establish venue on numerous occasions. For example, in 2020, the District of Hawaii explained that dismissal was proper because Plaintiff's complaint before that court "allege[d] no plausible basis for venue in the District of Hawaii" when it did not allege "that any party resides in Hawaii, or that any event or omission giving rise to the claims asserted in the complaint occurred in Hawaii." Horus Music Video Distrib., 2020 WL 1822597, at *4.

Despite this clear communication to Plaintiff of the minimum requirements of a

plausible basis for venue, in the instant case Plaintiff failed to allege that any party to the instant case resides in West Virginia, or that any event or omission giving rise to the claims asserted in the complaint occurred in West Virginia—or was even tangentially related to West Virginia in any way. See ECF No. 1. The Complaint fails to set forth any connection between the allegations therein and the State of West Virginia. Rather, Plaintiff's Complaint states that Plaintiff knowingly filed duplicative actions across multiple district courts. Id. at 5 (stating that Plaintiff also filed the same cause of action in the District of Maryland and the Eastern and Western Districts of Virginia.) Plaintiff also filed a duplicative case in the Southern District of West Virginia on the same day that he filed the instant action. This pattern continues even though Plaintiff has been explicitly informed that "[i]t is clearly improper and an abuse of the judicial process to pursue identical claims in multiple jurisdictions." Devos, 2020 WL 1669872, at *2.

Similarly, Plaintiff's pleading obligations under the Federal Rules have been explained to him at length; he has been provided opportunities to amend near-identical pleadings to cure the defects identified in this Complaint, and repeatedly warned that failure to cure such defects would result in dismissal with prejudice. See, e.g., Desert Parkway Behav. Hosp., 2019 WL 2397801, at *4. However, the Complaint in this case suffers from *precisely* the same defects.

In a strikingly similar case, the Middle District of Florida explained to Plaintiff that his Complaint was improper because, as "a quintessential shotgun pleading," it was "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and thus failed to give the agency "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Fed. Bureau of Investigation*, 2020 WL 1452495, at *3. Ignoring that court's words, Plaintiff substituted the CIA for the

FBI and recycled mirror-image allegations from the same complaint in this case—repeating the same errors expressly pointed out by the Middle District of Florida—this time against a different agency in a different venue. (Compare id. at *1, *with* ECF No. 1 at 9-10, 19-20.) Simply put, in the face of consistent court orders specifically explaining the errors in his litigation conduct, Plaintiff simply had no good-faith basis to initiate the instant action in this Court.

The third *Thomas* factor—the extent of the burden on the courts and other parties resulting from the Plaintiff's filings—likewise weighs in favor of sanctions. Thomas, 260 F. App'x at 596. "Without a doubt, a litigant who files a case without merit wastes the . . . limited resources of the court" as well as the named defendants. Trump, 2019 WL 140107, at *5. This is especially true under the circumstances due to Plaintiff's habit of making duplicative filings in multiple jurisdictions. See In re Sindram, 498 U.S. 177, 179-80 (1991) (denying IFP status to a petitioner in all future petitions for extraordinary relief based upon history of repetitious and frivolous filings).

This abuse of the IFP privilege unquestionably duplicates and multiplies the work of the district courts, wasting additional resources and overburdening courts' gatekeeping function. As the District of Nevada observed when it found that this factor weighed in favor of sanctions, Plaintiff's "voluminous and frivolous filings in [more than] twenty-five separate federal district courts and ten different circuit courts . . . have caused the courts to expend a huge amount of judicial resources to the detriment of other litigants who need and deserve the Court's attention." Soc. Sec. Admin., 2015 WL 4597834, at *8. The Middle District of Florida similarly observed, in declaring Plaintiff a vexatious litigant and imposing prefiling sanctions, that "the public is not well-served" when "the court system [is] weaponized by any party for improper purposes" because "[j]udicial time and

resources are wasted . . . [and] of course, diverted from legitimate, meritorious claims." Devos, 2020 WL 9078298, at *3. The Southern District of Ohio likewise noted under similar circumstances that "Plaintiff's *pro se* status is no excuse for wasting the Court's limited resources and depriving other litigants with meritorious claims of speedy resolutions of their cases by the continual filing of frivolous lawsuits." Trump, 2019 WL 140107, at *5.

The fourth and final *Thomas* factor also weighs in favor of sanctions because the inadequacy of alternative sanctions is well-documented. Thomas, 260 F. App'x at 596. Even though Plaintiff has not received prior warnings from *this* Court that he could be subject to sanctions if he continued to file frivolous lawsuits in this jurisdiction, the undersigned finds that a lesser sanction such as a warning would be futile in light of Plaintiff's demonstrated failure to heed similar warnings. Indeed, Plaintiff's litigation history demonstrates that he is highly likely to continue in his abuse of the IFP privilege in this Court.

As Magistrate Judge Bowman of the Southern District of Ohio explained in Trump, a pre-filing sanction is necessary because Plaintiff falls into a "unique category of abusive litigators" who would otherwise waste "additional resources in the course of judicial gatekeeping." Trump, 2019 WL 140107, at *5. Despite being "repeatedly warned [of sanctions] by other federal courts," Judge Bowman observed that Plaintiff "has demonstrated no ability to curtail his litigation practices nationwide, much less in this Court." Id. at *3, 5. Indeed, notwithstanding the trail of "sanctions and admonishments, as well as a resounding lack of success in the federal courts that would give pause to most litigants, Plaintiff has given no hint of abating his pernicious conduct." *Trump*, 2019 WL 140107, at *2. See also Soc. Sec. Admin., 2015 WL 4597834, at *8 (finding that, though

Plaintiff had "been repeatedly warned about filing meritless and frivolous claims by many other federal district courts and appellate courts[,] [a]s demonstrated by [Plaintiff's] national filing history, those warnings have had no effect"). For that reason, Judge Bowman concluded that "the only way to effectively stop" Plaintiff's abusive conduct was to impose prefiling sanctions. See id. That is no less true today, as Plaintiff has continued the same pattern of conduct in this case. Thus, each of the four Thomas factors weigh in favor of sanctions. As numerous district courts previously determined under strikingly similar circumstances, the undersigned finds that a prefiling injunction is necessary.

In order to impose this sanction, "the court must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." Thomas, 260 F. App'x at 596. Addressing this issue in Trump, Judge Bowman recommended that Plaintiff be classified as a harassing and vexatious litigator in the Southern District of Ohio and pre-filing restrictions be imposed enjoining Plaintiff from filing any further complaints in that district unless he either paid the full filing fee or obtained a certification from an attorney in good standing that Plaintiff was filing suit in the correct venue. Trump, 2019 WL 140107, at *5. Here, in light of the well-documented dismissal orders from other district courts addressed at length, *supra*, as well as Plaintiff's filing of an identical complaint in the Southern District of West Virginia on the same day that he initiated this action, *and* the express acknowledgement on page five of the Complaint that Plaintiff knowingly filed this same cause of action in the District of Maryland and Eastern and Western Districts of Virginia despite being warned that this is improper, the undersigned concurs with Judge Bowman that a similar sanction is appropriate in this case to deter Plaintiff from filing repetitive, duplicative, and frivolous lawsuits in this Court that waste the Court's limited judicial resources and clog its docket with meritless litigation. Id. at *3, 5.

This sanction is narrowly tailored to fit the specific circumstances at issue and serves "[t]he overriding goal in policing [IFP] complaints[,] [which] is to ensure that the . . . mechanism of § 1915(b) does not subsidize suits that prepaid administrative costs would otherwise have deterred." Nagy, 376 F.3d at 256-57. That is precisely the concern here. Presently, a litigant who wishes to initiate a civil suit in federal court without the IFP privilege is generally subject to a $350.00 statutory filing fee as well as a $52.00 administrative fee, totaling $402.00. *See* 28 U.S.C.A. § 1914(a) (2020); District Court Miscellaneous Fee Schedule, Judicial Conference of the United States (Dec. 1, 2020) (issued in accordance with 28 U.S.C. § 1914). Accordingly, without the IFP privilege, Plaintiff's decision to file his Complaint in this case along with duplicative complaints in the U.S. District Courts of Maryland, Eastern Virginia, Western Virginia, and Southern West Virginia, ostensibly would cost him approximately $2,010.00. See id. Likewise, while district court fees have increased periodically, it is clear that the approximately 300 lawsuits Plaintiff brought in federal district courts nationwide over the past decade would have cost him many thousands of dollars. Thus, without the IFP subsidy, at minimum Plaintiff would have been incentivized to thoughtfully consider the proper venue rather than the "shotgun" approach he has taken.

Importantly, the undersigned's recommended sanction is narrowly tailored to address the central concern—preventing Plaintiff from abusing the IFP privilege—without barring Plaintiff's access to the court. Plaintiff remains free to proceed upon payment of the Court's filing fee; he is merely precluded from receiving the IFP *privilege* "without first ascertaining the appropriate venue." Id. at *3. Accordingly, the undersigned recommends that Plaintiff Ronald Satish Emrit be declared a harassing and vexatious litigant pursuant to 28 U.S.C. § 1651(a), and enjoined from filing any additional

complaints in this Court without either full payment of the applicable fees, or obtaining a certification from an attorney in good standing that he is filing suit in the correct venue. Trump, 2019 WL 140107, at *5.

## IV.    RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** as follows:

(1)    Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs [ECF No. 2] be **DENIED**,

(2)    Plaintiff's Complaint [ECF No. 1] be **DISMISSED**, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B);

(3)    Plaintiff Ronald Satish Emrit be declared a harassing and vexatious litigant pursuant to 28 U.S.C. § 1651(a), and therefore be **ENJOINED AND PROHIBITED** from filing any additional complaints in this Court unless accompanied by either:

   i.    full payment of the statutory and administrative filing fees; or

   ii.    an affidavit by a licensed attorney in good standing in this Court or the jurisdiction in which he or she is admitted, attesting that he or she has reviewed such complaint and that the factual allegations contained therein provide a good-faith basis for venue in this Court; and

(4)    The Clerk of Court be **DIRECTED** not to accept any pleadings from the identified Plaintiff herein, absent compliance with the above restrictions, and be **AUTHORIZED** to reject and refuse to file, and/or discard any new complaint, petition, document on a closed case, or any other document submitted in violation of the Court's Order.

Any party may, within fourteen (14) days after being served with a copy of this

28

Report and Recommendation, file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection. A copy of such objections should also be submitted to the Honorable GINA M. GROH, United States District Judge. Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record, if any, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

DATED: April 1, 2022

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE